UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SASH BALASINKAM,

                Plaintiff,

    – *against* –

NYC HEALTH + HOSPITALS, *and*
CITY OF NEW YORK,

                Defendants.

**OPINION & ORDER**

25-cv-01667 (ER)

RAMOS, D.J.:

Sash Balasinkam, who is proceeding *pro se*, brings suit against the City of New York and New York City Health and Hospital Corporations ("NYCHHC") alleging violations of his federal constitutional rights pursuant to 42 U.S.C. § 1983, as well as New York state law claims. Doc. 11. Specifically, Balasinkam asserts claims of unlawful search and seizure and false imprisonment, in violation of the Fourth Amendment, as well as negligence claims against the City, and, against NYCHHC, he asserts claims of false imprisonment in violation of the Fourth and Fourteenth Amendment, medical malpractice, and intentional infliction of emotional distress. *Id.* Pending before the Court are defendants' motions to dismiss. Docs. 37, 44. For the reasons set forth below, the motions are GRANTED.

I.      **BACKGROUND**

      **A. Factual Background**

On January 11, 2025, Balasinkam was involved in what he describes as "a late-night phone dispute" with his mother where he concedes he "was mean to her."[1] Doc. 11 at 5. According to Balasinkam, following the call his mother "unnecessarily" contacted

---

[1] There is a discrepancy in Balasinkam's amended complaint regarding the date of the incident. As against Lincoln Hospital and the NYPD it alleges the incident occurred on January 11, 2025, whereas against New York EMT it lists the date as March, 11, 2025. *See* Doc. 11 at 1, 3, 5. Because the initial complaint was filed on February 25, 2025, the Court adopts January 11, 2025, as the operative date for purposes of this motion. *See* Doc. 1.

the police.  *Id.*  And that, "[w]ithout evidence of wrongdoing or imminent danger,"

officers of the New York Police Department ("NYPD") forced their way into his

apartment and took his identification without consent.  *Id.*  He further alleges that,

"without reasons or evidence," the officers "unnecessarily" involved emergency medical

technicians ("EMTs") despite "posing no threat to himself or others."  *Id.*

According to Balasinkam, the EMTs then "forcibly" transported him to Lincoln

Hospital where he was detained for approximately two weeks.  *Id.* at 1, 3.  During this

period, Balasinkam asserts that he was administered an injection of Invega[2] "without

being asked about his treatment history or his prior adverse reactions to the medication."

*Id.* at 3.  As a result, he claims to have suffered emotional distress, prolonged loss of

freedom, and medical harm.  *Id.* at 1, 3.

### B.  Procedural Background

Balasinkam initiated this action on February 25, 2025, against the NYPD,

unnamed New York City EMTs,[3] and Lincoln Hospital.  *See* Doc. 1.  On March 20, 2025,

he filed an amended complaint.  Doc. 11.  The Court construes the amended complaint as

asserting Fourth and Fourteenth Amendment constitutional claims under 42 U.S.C. §

1983, as well as claims under New York State law.

On March 31, 2025, the Court issued an order of service.  Doc. 15.  The Court

dismissed Balasinkam's claims against the NYPD and the EMTs and substituted as the

proper defendant the City of New York.  *Id.* at 2–3.  The Court also dismissed the claims

against Lincoln Hospital and substituted as the proper defendant the NYCHHC.  *Id.* at 3.

---

[2] Although no party explains this in their brief, the Court notes that Invega is the brand name for paliperidone, an atypical antipsychotic medication indicated for the treatment of schizophrenia and schizoaffective disorder.  *See Paliperidone (Invega)*, NATIONAL ALLIANCE ON MENTAL HEALTH, https://www.nami.org/treatments-and-approaches/mental-health-medications/types-of-medication/paliperidone-invega/ (last visited May 1, 2026).

[3] The Court notes that in the initial complaint, Balasinkam identified the defendant as "New York City Emergency Medical Services (EMT)," Doc. 1 at 1, whereas in the amended complaint, he refers to the defendant as "New York EMT," Doc. 11 at 1.  The Court construes both references as referring to the same defendant, namely New York City EMTs.

In addition, the Court directed the City and NYCHHC to identify the NYPD officers, EMT personnel, and Lincoln Hospital staff involved in the alleged incident and ordered Balasinkam to file a Second Amended Complaint within 30 days of receiving that information. *Id.* at 4–5.

On May 27 and May 30, 2025, the Defendants submitted responses identifying the NYPD officers, EMT personnel, and Lincoln Hospital staff involved. Docs. 26, 27. To date, Balasinkam has not filed a Second Amended Complaint, as directed.

On July 2 and July 11, 2025, respectively, NYCHHC and the City requested a pre-motion conference seeking leave to file motions to dismiss. Docs. 30, 33. On July 10 and July 14, 2025, Balasinkam filed individual letters opposing the request as premature. Docs. 34, 35. At the telephonic pre-motion conference, the Court granted defendants' request and set the following briefing schedule: (1) defendants' motions due on September 29, 2025; (2) Balasinkam's response due October 27, 2025; and (3) the defendants' replies due November 10, 2025. *See* Docket Entry dated August 1, 2025.

The motions were filed on September 29, 2025. The defendants seek dismissal on the grounds that, *inter alia*, the federal claims fail to state a claim and the state claims fail to affirmatively plead that a notice of claim was filed as required by New York State law. *See* Doc. 39 at 13, 19–20; Doc. 45 at 12.

Balasinkam did not respond to either motion by the October 27, 2025 deadline. And, on November 13, 2025, the Court directed Balasinkam to file his opposition by November 26, 2025, and warned that if he failed to do so, the Court would consider the Defendants' motions unopposed. Doc. 49. To date, Balasinkam has not filed a response to either motion to dismiss.

## II.    LEGAL STANDARD

### A. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences

3

in the plaintiff's favor.  *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

The question in a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).  Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A *pro se* complaint that "tenders naked assertion[s] devoid of further factual enhancement" will not suffice.  *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

A plaintiff's failure to oppose a Rule 12(b)(6) motion "does not alone justify dismissal for failure to state a claim for relief." *Cagle v. Weill Cornell Medicine*, 680 F. Supp. 3d 428, 434 (S.D.N.Y. 2023).  Instead, "[i]n deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* (internal quotations and citation omitted).  While a party must "be given reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (citation omitted).

## III.    DISCUSSION

Read liberally, the amended complaint can best be interpreted as alleging violations of the Fourth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983, as well as various claims arising under New York State law.  *See* Doc. 11

As against the City of New York, Balasinkam asserts three claims:  (1) unlawful search and seizure, based on allegations that NYPD officers unlawfully entered his home without a warrant or probable cause; (2) negligence, arguing that NYPD officers "failed to exercise reasonable care by escalating the situation unnecessarily and infringing on

[his] rights," and that the EMTs "breached their duty of care by transporting [him] without valid medical reasons;" and (3) false imprisonment, arguing that the EMTs "unlawfully detained [him] by forcing transportation to the hospital without his consent or necessity." *Id.* at 1–2, 6.

As against NYCHHC, Balasinkam likewise asserts three claims: (1) medical malpractice, based on allegations that he was "negligently administered medication without proper consultation or regard for [his] medical history;" (2) false imprisonment, arguing that he was "unlawfully detained . . . without valid medical reasons or due process;" and (3) intentional infliction of emotional distress.[4]  *Id.* at 3–4.

The defendants each argue that Balasinkam fails to state a viable Fourth and Fourteenth Amendment claim and that the state claims are barred for failure to meet New York General Municipal Law procedural requirements. *See* Doc. 39 at 13, 19–20; Doc. 45 at 12.

The Court need not reach the merits. Even assuming, *arguendo*, that constitutional violations had occurred, Balasinkam's amended complaint fails to state a viable *Monell* claim against Defendants. And because no federal claims remain, insofar as the New York State law claims are brought against the City and NYCHHC, the Court declines to exercise supplemental jurisdiction over those claims.

### A. *Monell* Liability

Section 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute,

---

[4] In his letter in opposition to NYCHHC's request for a pre-motion conference, Balasinkam attempts to clarify his claims. Doc. 34. He asserts that he is "rais[ing] a claim of false imprisonment and medical abuse under 42 U.S.C. § 1983," grounded in violations of his Fourth and Fourteenth Amendment rights. *Id.* at 1. Specifically, he claims that he was involuntarily held at Lincoln hospital for an extended period of time without procedural due process and that he was given medication "without informed consent, implicating both bodily integrity and dignity protected under the Constitution." *Id.*

however, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Consistent with that principle, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).

Accordingly, a municipality is liable under § 1983 if it, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id.* at 691–92. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

A plaintiff may satisfy the "custom or policy" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal quotations and citations omitted). Under any of these theories, "a plaintiff must show that

the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).  Importantly, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotations omitted) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).

Here, although in his letters opposing defendants' request for a pre-motion conference, Balasinkam repeatedly stated his intent to file a second amended complaint to include the individuals allegedly responsible for the asserted constitutional violations, he has not done so.[5]  *See* Doc. 34 at 2; Doc. 35 at 1.  As a result, the amended complaint asserts claims only against the City and NYCHHC.  The City is a municipality. NYCHHC is a public benefit corporation created under the New York City Health and Hospitals Corporation Act, and courts in this District consistently treat it as a municipal entity subject to liability under § 1983 as governed by *Monell* and its progeny.  *See, e.g.*, *Barrow v. Brann*, 20-cv-09417 (ER), 2024 WL 4026252, at *5 (S.D.N.Y. Sep. 3, 2024); *Simpkins v. Bellevue Hospital*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993) (citing N.Y. Unconsol. Laws § 7382).

Even liberally construed, the amended complaint contains no allegations that any constitutional violation resulted from an official policy, practice, or custom of either municipal defendant.  It does not identify any such policy or custom, nor does it plead

---

[5] Pursuant to a court order, and in an effort to assist Balasinkam, defendants provided him with the names of the Lincoln Hospital staff involved on May 27, 2025, and the NYPD officers and EMT personnel involved on May 30, 2025.  *See* Docs. 26, 27.

facts from which one could reasonably be inferred.[6]  Accordingly, Balasinkam has failed to plead a basis for municipal liability under *Monell*.  As a result, his § 1983 claims against the City of New York and NYCHHC can be dismissed on this basis alone.

### B.  State Claims

Federal district courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (stating that, under § 1367(a), as under *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), supplemental jurisdiction applies to state-law claims that arise "from the same facts" as a federal-law claim over which a court has original jurisdiction).  Supplemental jurisdiction represents "a doctrine of discretion, not of plaintiff's right."  *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Section 1367(c) lists circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)."  28 U.S.C. § 1367(c).  One such circumstance is where "the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  Subject matter jurisdiction in the instant action is based on federal question jurisdiction.  *See* Doc. 11 at 1, 3, 5; 28 U.S.C. § 1331.

Having dismissed all federal claims under Rule 12(b)(6), the Court declines to adjudicate the state law claims.  *See Royal Canin*, 604 U.S. at 32 (explaining that where the federal anchor claims have been dismissed and only supplemental jurisdiction over state-law claims remains, the district court "may (and indeed, ordinarily should) kick the

---

[6] Balasinkam asserts in his letter in opposition to NYCHHC's request for a pre-motion conference, that "[d]iscovery may reveal that protocols at Lincoln Hospital permitted involuntary holds or medication without adequate safeguards, which would constitute a policy or practice."  Doc. 34 at 1.  Such conjecture, however, falls well short of the pleading standard required to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 555 (requiring the factual allegations in a complaint "to raise a right to relief above the speculative level").

case to state court" because, in such a context, "federal law is not where the real action is"); *see also Gibbs*, 383 U.S. at 726 (noting that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" and further stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"). Having resolved all of Balasinkam's federal claims against him, the Court declines to adjudicate the related state law claims and dismisses them without prejudice.[7]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED without prejudice. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 37 and 44, and to close the case.

It is SO ORDERED.

Dated:    May 6, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J

---

[7] The Court notes that New York General Municipal Law Sections 50-e and 50-i require a plaintiff asserting a tort action against municipalities, municipal entities, and their employees to: (1) file a notice of claim within 90 days after the claim arose; and (2) commence the action within one year and 90 days after the incident giving rise to the claim. N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1); *Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 793 (2d Cir. 1998) (noting that the New York State notice of claims requirement "is a condition precedent to bringing personal injury actions against municipal corporations such as [NYCHHC]"). "Notice of claim requirements are construed strictly by New York state courts," and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793–94 (quotations and citations omitted). Moreover, the plaintiff bears the burden of demonstrating compliance with the notice of claims requirement. *Etuk v. City of New York*, No. 24-cv-4957 (KPF), 2026 WL 366763, at *14 (S.D.N.Y Feb. 10, 2026).

10